Richard A. Finberg
Bradley S. Gelder
MALAKOFF DOYLE & FINBERG, P.C.
437 Grant Street
Pittsburgh, Pennsylvania 15219
Telephone No.  412.281.8400

Attorneys for Representative Plaintiffs Cynthia Ramer, Ricci Neer
and the Class they represent

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA RAMER and RICCI NEER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MYFAMILY.COM, INC. and ANCESTRY.COM,<br><br>    Defendants. | HONORABLE DEE V. BENSON<br><br><br>CASE NO. 2:05cv359 DB |

**MEMORANDUM OF SUPPORTING AUTHORITIES
IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S
PETITION FOR AN AWARD OF REASONABLE ATTORNEY FEES**

MALAKOFF DOYLE & FINBERG, P.C.
Richard A. Finberg (PA ID #17282)
Bradley S. Gelder (PA ID #23097)
Suite 200 – The Frick Building
Pittsburgh, PA 15219
(412) 281-8400

Plaintiffs' class counsel, Malakoff Doyle & Finberg, P.C. ("MDF") and John E. Charland, Esquire, created a common fund that Defendants value at over Three Million ($3,000,000) Dollars.

*See* Stipulation of Settlement ("Stipulation"), Section VI.A.1. ("The Subscription Benefits have a current aggregate market value in excess of Three Million ($3,000,000) Dollars"); *see, also,* Stipulation § I.W (Defendants to establish and distribute Subscription Benefits "having a value in excess of $3,000,000").

The settlement fund, i.e., the Subscription Benefits, consists of unlimited free use of all of Defendants' databases for each Class Member for thirty one days without charge or obligation. Stipulation § VI.A.1.

Class counsel also created two other substantial benefits for the class.   The first is an Equitable Benefit which provides that any person who subscribed or does subscribe to an annual subscription agreement payable in monthly installments may terminate the subscriptions as though they were monthly subscriptions terminable without further obligation. Stipulation § VI.A.2.[1]

In addition, Defendants are responsible for payment of Class Counsel's attorneys' fees and expenses as approved by the Court up to $150,000.  (Class Counsel have agreed not to seek more than $150,000 in fees, costs and expenses).  Defendants have reserved the right to object to any fees sought by Class Counsel, but have agreed not to appeal any award not exceeding $150,000. Stipulation § VI.B.  Therefore, payment of the attorneys' fees and expenses will not reduce the Benefits available to the Class..

---

[1]      Defendants had informally instituted  this policy either before or during the pendency of this suit.  However, Defendants agreed to formalize the policy as a condition of settlement.

I.      THE TENTH CIRCUIT LAW OF ATTORNEY FEE AWARDS IN COMMON FUND
        CASES

The object of a reasonable attorney fee award was succinctly stated by the Tenth Circuit in

*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) quoting the common fund fee

award fee case of *Steinlauf v. Continental Illinois Corp.,* 962 F.2d 566, 572 (7th Cir.1992):   "to

simulate the market when a direct market determination is infeasible."

The Tenth Circuit has issued a number of common fund fee opinions on how best to

"simulate the market."  In *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-455 (10th Cir. 1988),

*cert. denied.*  488 U.S. 822 (1988), the Tenth Circuit suggested that the twelve *Johnson* fee factors

should be considered by the district court in making a fee award:

> The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and
> difficulty of the questions; (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee; (6) any prearranged fee--this is helpful but not determinative;
> (7) time limitations imposed by the client or the circumstances; (8) the amount
> involved and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the undesirability of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.  488 F.2d
> at 717-19.

The *Brown* Court explicitly recognized that "rarely are all of the [twelve] *Johnson* factors

applicable; this is particularly so in a common fund situation."  *Brown*, *Id*. at 456.  Despite the fact

that, unlike here, *Brown*  was a megafund case of $75 million , the Tenth Circuit stated "We note that

a review of other federal common fund cases demonstrates that a 16.5% attorneys' fee award is

clearly within the range of awards deemed reasonable by other courts in similar or less lengthy and

less complex cases." (footnote omitted).  *Id.* at 453.[2]

---

[2]       The significance of *Brown* approving a percentage of fund fee award in a
megafund case is that in many instances the time and effort devoted to a class action are not
directly proportional to the size of the settlement fund, i.e., a $10,000,000 case often does not
require ten times the effort and time of a $1,000,000 case.

In *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) the Tenth Circuit again recognized the propriety of awarding a fee by the percentage of the fund method in common fund cases:

> In *Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir.), *cert. denied*, 488 U.S. 822 [citation omitted], this court distinguished common fund cases from statutory fee cases and recognized the propriety of awarding attorneys' fees in the former on a percentage of the fund, rather than lodestar, basis. *Id.* at 454-56 . . .

The *Uselton* court then held that in a common fund case, a court should give consideration (but not equal weight) to the twelve *Brown/Johnson* fee factors, which were originally developed for statutory fee-shifting cases (" [the *Johnson* factors']. . . applicability and weight in common fund situations would undoubtedly be different [than in statutory fee situations], 9 F.3d at 853. *Uselton* approved a fee award of $507,500, representing 29% of the common fund, deeming the award which it deemed "near the top of the range for common fund cases." *Id.,* 9 F.3d at 854. In contrast, Class Counsel's 5% request here must be considered near the bottom of the range.

### A.    An Overview of the *Brown/Johnson* Fee Award Factors

The Tenth Circuit has long recognized that "a decisive factor in [a] common fund class action case is the amount involved and the results obtained." *Brown*, 838 F.2d at 456. In contrast, in a statutory fee shifting case, "time and labor required – is an essential touchstone . . ." *Id.* Thus, certain of the *Johnson* factors are "given greater weight" in common fund fee awards than in statutory fee shifting fee awards.

In *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) the issue was the methodology the District court used in determining a fee award to class counsel from a $44 million common fund. The Special Master recommended that the district court use the percentage of the fund method and a percentage of 22.5% of the common fund. The district court disagreed with the Special Master and adopted a statutory fee shifting "lodestar" method (*i.e.*, a reasonable number of hours multiplied by the hourly rates) plus a risk enhancement. The *Gottlieb* Court, reversing the district court (and adopting the views of the Special Master), recognized the significant shift in Tenth Circuit common

fund attorney fee award case law (and preference for a percentage of the fund fee award in such cases) after the District court had issued its fee opinion:

> *Uselton* implies a preference for the percentage of the fund method.  In all cases, whichever method is used, the court must consider the twelve *Johnson* factors. The district court issued its opinion before *Uselton,* and therefore did not have the benefit of its implicit preference for percentage of the fund.  (Footnote omitted)

*Id.* at 483.

Earlier, the *Gottlieb* Court suggested that a lawyer's time may not be an accurate measure of value [in common fund fee award cases].  *Gottlieb*, 43 F.3d at 483 n.3:

> Indeed, attorneys generally are departing more from calculating fees on an hourly basis, reflecting the fact that the number of hours spent on a particular piece of legal business is not always the best measure of the value of that work.

The Tenth Circuit in *Gottlieb* then proceeded to hold, with respect to the Special Master's suggested 22.5% percentage of the common fund (although a megafund), that:

> We need not remand this case to the district court for its own selection of a percentage fee, however, because the 22.5% selected by the master is well within the range of permissible reasonable fee awards, and is reasonable in this case.

*Id.* at 487-488.

Respectfully, this Court should utilize the percentage of the fund method in its fee award as suggested in *Gottlieb, supra*. and award class counsel the requested 5% of the common fund benefits that they obtained for their class clients.

### B.    The Reasoning of the Tenth Circuit in *Gottlieb* Is Instructive Here

The *Gottlieb* Court held that the district court had abused its discretion in using the lodestar method of calculating attorneys fees contrary to the findings of a Special Master.  The Special Master had selected the percentage of the fund approach for the following reasons, *inter alia*:

> (1)   it 'most closely matches the methodology actually employed in the marketplace;'

> (2)   because it matches the market, it 'provide[s] incentive for counsel to pursue actions such as this on behalf of large groups of investors;'

> (3)   it is less subjective than the lodestar approach;

4

(4)  it gives primary consideration to the results obtained by counsel;

(5)  because class counsel was initially retained on a contingent fee basis, a percentage fee most closely approximates the original agreement between client and counsel; [and]

(6)  a fee expert retained by class counsel opined that percentage fee awards are 'customary and reasonable' in cases like this one.

*Gottlieb*, at 484.  Respectfully, the same reasons justify the 5% fee award requested here.

## II.   APPLICATION OF THE *BROWN/ JOHNSON* FEE FACTORS DEMONSTRATES THAT A FEE AWARD OF $150,000 (*i.e.*, 5%) OF THE COMMON FUND IS REASONABLE

### 1.   Time and labor required.

The "lodestar" value of the services of MD&F (hours times hourly rates) is $76,753.75 as of January 9, 2006 with additional estimated lodestar value of $13,250.00 thereafter.[3] John Charland's lodestar is $6,755.50.  Total lodestar for Class Counsel, therefore was $96,759.25.  In addition, MD&F has incurred out-of-pocket costs, exclusive of general office overhead, of $2,085.92 as of January 18, 2006 with additional estimated future expenses of $500 for a total of $2,585.92.  MD&F also has reimbursed its co-counsel $239.41 of his expenses to date.  Actual and estimated future expenses, therefore, were $2,825.33.  *See*  separately filed Declaration of Richard A. Finberg, Esquire and Affidavit of John E. Charland, Esquire.

Collectively, the lawyers in the class action firms have expended a significant portion of their time and resources on this case, especially when it is considered that this undertaking was commenced by relatively small plaintiff law firms on a completely contingent fee basis.

Moreover, unlike in many far bigger class actions that sometimes create megafunds, class counsel here were unable to "piggy-back" on the prior findings of wrongdoing by a a governmental agency or on a criminal indictment.

---

[3]    MDF estimates future time expenditures of at least 40  additional attorney hours and 10 additional paralegal hours after January 9, 2006 in connection with completing Plaintiffs' Settlement Brief, traveling to, preparing for and attending the Settlement Hearing, responding to Class Members' inquiries, and resolving any potential disputes that may occur.

5

### 2.      Novelty and difficulty of questions involved.

Truth-in-Lending cases are justifiably known for their complexity.  No one could reasonably dispute that this case presents many novel and difficult questions of law, including:

(1)      Was the price differential between the one time lump sum payment for an annual subscription and the total payments charged to subscribers who paid for an annual subscription in monthly installments a "finance charge" within the meaning of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1638(a)?

(2)      Was Defendant required  under TILA to disclose the price differential between the one time lump sum annual subscription payment and the total payments charged to subscribers who paid for an annual subscription in monthly installments as a finance charge pursuant to TILA, 15 U.S.C. §§  1605(a) and 1638(a)?

(3)      Did Defendant fail to disclose the finance charges it imposed on subscribers who paid for their annual subscriptions in monthly installments within the meaning of TILA's definition of finance charge at 15 U.S.C. § 1605(a)?

(4)      Did Defendant violate TILA, 15 U.S.C. § 1638(a), when it failed to disclose the price differential between the one time lump sum annual subscription payment and the total payments charged to subscribers who paid for an annual subscription in monthly installments?

Counsel for Plaintiffs were unaware of TILA's provisions being applied to this or any similar context when they initiated this action.  To counsel's knowledge, this is the first attempted application of TILA to any similar fact situation to date.[4]

### 3.      Skill required.

The unique nature of this Truth-In-Lending case and the complexity of the issues  required a high degree of legal skill.  Prosecuting class claims against defendants represented by exceptionally capable defense counsel with extensive resources required that the Class have equally able lawyers

---

[4]   This case had an interesting twist.  The Defendants' liability was a maximum TILA statutory award of the lesser of $500,000 or 1% of the Defendants' net worth.  Class counsel obtained a settlement fund the Defendants estimate to have a market value in excess of $3 million because of the difference between market value, as measured by what the class members would have to pay to receive the settlement fund, and the Defendants' cost to produce the settlement fund.  Thus, although class members would have to pay in excess of $3,000,000, cumulatively, to receive the Subscription Benefits, the cost to Defendants of providing class members with one month's access to Defendants' databases is substantially less than $3,000,000.

6

with experience in both complex Truth-In-Lending and class litigation.  The affidavits submitted in support of this petition for attorneys' fees show that class counsel have broad experience in litigating Truth-In-Lending cases and other complex class litigation.  Moreover, the result here confirms that class counsel possessed the skills necessary to effectively prosecute the Class claims.

### 4.     Other employment precluded.

The two petitioning law firms have active, ongoing practices.  As shown by the supporting affidavits, they have devoted a substantial amount of time to this case.  Obviously, to the same extent that they committed professional and financial resources, they could not take on other cases, some of which were more predictably profitable.   The prosecution of this litigation reduced their opportunity for employment in other cases.

### 5.     Fee customarily charged in the locality for similar legal services.

The "customary fee" factor in a common fund case is basically the same as the factor suggesting consideration of awards in similar cases.  *Brown,* 838 F.2d at 455.

Numerous Tenth Circuit district courts have recognized that a fee as high as 33% may be appropriate in common fund cases.  *See, e.g., Ramah Navajo Chapter v. Norton*, 250 F.Supp.2d 1303, 1313 (D.N.M. 2002) discussing the "customary fee" and awarding $5.8 million representing 20% of a $29 million common fund.  Significantly, the *Ramah* court recognized that in the Tenth Circuit (1) there is a preference for a percentage of the fund award in common fund cases (*Id.* at 1313), (2) in contingent class action fee cases, there is a "benchmark" of 25% (*Id.* at 1315) and (3) that in common fund cases, "a reasonable fee is derived by giving greater weight to the results obtained, the novelty and difficulty of the issues, and the skill of counsel than to the time spent." *Id*. at 1316.  *See also In re Copley Pharmaceutical, Inc.*, 1 F.Supp.2d 1407 (D.Wyo. 1998) where the court awarded 13% of a megafund of over $65 million stating that the award represented "roughly one third of the market rate." *Id*. at 1448.  The fee request here is roughly one-sixth of one-third, *i.e.*, 5%.

That this case was handled on a contingent basis is quite relevant.  Few lawyers would take on representation of a class claim without being compensated for risk when they prevailed and

therefore "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuming competent representation . . ." *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1299 (9th Cir. 1994).  Failure to adequately compensate for "risk" constitutes clear "error." *Steinlauf v. Continental Illinois Corp.,* 962 F.2d 566, 569 (7th Cir.1992), quoted with approval on a related point in *Robinson*, 160 F.3d at 1281.

### 6. The amount involved and the results obtained.

In awarding attorneys fees in a common fund class action, the amount involved and results obtained are decisive factors.  *Brown*, 838 F.2d at 456.  The *Brown* Court explained that this factor may be given greater weight "when . . . the recovery was highly contingent and. . . that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Id.* at 456.  Both conditions apply here.

Obtaining a recovery here was highly contingent.  Class counsel had no assurance of success. The Defendants vigorously denied the validity of the Plaintiffs' claims and still deny liability.  *See* Stipulation, Section VIII.D, which provides that the Stipulation is of no evidentiary import if the Settlement does not receive "final" approval.

Unlike some cases where a governmental entity is involved, the substantial class recovery would not have been realized but for class counsel's efforts.

### 7. The time limitations imposed by the client or by the circumstances.

This litigation did not involve client-imposed time limitations; nonetheless, the circumstances were demanding.

### 8. The nature and length of the professional relationship with the client.

Class counsel have never before represented the Named Plaintiffs.  Given the nature of this suit, it is highly unlikely that class counsel will ever represent these parties again.  The additional benefits of satisfied clients with repeat business generally is not one of the benefits of class action litigation.

9.      **The experience, reputation and ability of class counsel.**

The experience and reputation of MD&F, lead class counsel, are set forth in Exhibit 1 to the Declaration submitted in support of their fee petition.  As for their ability, the Court is respectfully requested to make its own assessment based on class counsel's filings and the excellent settlement results quickly obtained in this case.

Moreover, class counsel are experienced in handling cases of this complexity and have excellent reputations in the legal community.  In this connection, "lead" counsel, Malakoff Doyle & Finberg, P.C., has the highest Martindale-Hubble rating of "AV."  The attorneys have the level of competence and commitment to litigate such complex cases to successful conclusions, as demonstrated by the settlement results in this case.  Were it not for this class action and class counsel's efforts, many of Defendants' customers would be without any redress.  Throughout this process, class counsel and the representative parties have fairly, adequately and vigorously represented the interests of the class efficiently.

10.      **Whether the fee is fixed or contingent.**

Any fee to be received as compensation by class counsel in this case was entirely contingent upon their obtaining a class recovery.  Class counsel here have borne the entire risk of failing to achieve a successful and substantial result for the class.  Undertaking representation of this class has had substantial effects on each  of  the plaintiffs' two small law firms' financial conditions.  Respectfully, obtaining a fee award of 5% of the settlement common fund (*i.e.*, $150,000) is fair and reasonable given all the circumstances.

In one of its infrequent formal opinions, Formal Opinion No. 94-389 (October 5, 1999), the ABA recognized that an early settlement was not necessarily relevant in a contingent fee case:

> Since the amount of the recover will be largely determined by the lawyer's knowledge, skill, experience and time expended, both the defendant and the plaintiff may best be served by a contingency fee arrangement that ties the lawyer's fee to the amount recovered.
>
> Also, an early settlement offer is often prompted by the defendant's recognition of the ability of the plaintiff's lawyer fairly and accurately to value the case and to proceed effectively through trial and appeals if necessary.  There is no ethical reason

why the lawyer is not entitled to an appropriate consideration for this value that his engagement has brought to the case, even though it results in an early resolution.

That is why in determining a reasonable common fund fee award, the view is *ex post* at the time of the litigation undertaken, not *ex ante* at the time of settlement. *Lindy Bros. Builders, Inc. v. American Radiator, Inc.*, 540 F.2d 102, 117 (3d Cir. 1976) ("at the time of filing suit," not hindsight) and *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir.), *cert. denied*, 444 U.S. 981 (1979) (fairness of fee contract "determined with reference to the time when the contract was made").

In non-megafund cases, as here, fee awards from common funds of a "paltry seven percent of the common fund" have been reversed as a matter of law. *Paul, Johnston, Alston & Hunt v. Graulty*, 866 F.2d 268, 271 (9th Cir. 1989). Yet, here, class counsel are seeking even less.

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that the prevalent method of awarding fees in common fund cases "is based on a percentage of the fund bestowed on the class." *Cf. Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3rd Cir. 2000) (in common fund cases, "the scope of the fund created and the number of persons benefitted" is the first of several factors to be applied in setting a fee.")

Therefore, it is generally recognized that "The plaintiff class should ordinarily receive 75% of the wealth the attorneys brought them, according to the 25% 'proper benchmark . . ..'"*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 109 F.3d 602 (9th Cir. 1997). *A fortiori*, the 5% fee and expense award requested here is more than fair and reasonable given the totality of the circumstances.

10

**III.    CONCLUSION**

For the reasons stated above, class counsel, Malakoff Doyle & Finberg, P.C. and John Charland, Esquire request a fee, cost, and expense award of $150,000 representing 5% of the common fund that they created.

Respectfully submitted,

MALAKOFF DOYLE & FINBERG, P.C.


DATED: January 23, 2006            By  *Bradley S. Gelder*
                                        Richard A. Finberg (PA ID #17282)
                                        Bradley S. Gelder (PA ID #23097)
                                        Suite 200 – The Frick Building
                                        Pittsburgh, PA 15219
                                        (412) 281-8400

                                        *Counsel for Representative Plaintiffs*
                                        *Cynthia Ramer and Ricci Neer and the Class*
                                        *Plaintiffs*

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing *Memorandum of Supporting Authorities in Support of Plaintiffs' and Class Counsel's Petition for an Award of Reasonable Attorney Fees* was served upon the following via E-Mail and First Class, U.S. Mail, Postage Prepaid this **23rd** day of **January 2006**:

Matthew Howell, Esquire
mhowell@fillmorespencerlaw.com
Barnard N. Madsen, Esquire
bmadsen@fillmorespencerlaw.com
**Fillmore Spencer, LLC**
3301 N. University Avenue
at Jamestown Square
Provo, UT 84604

*Bradley S. Gelder*

Bradley S. Gelder