Barnard N. Madsen (4326)
Matthew R. Howell (6571)
FILLMORE SPENCER, LLC
3301 North University Avenue
Provo, Utah  84604
Telephone No. (801) 426-8200

Attorneys for Defendants MyFamily.com,
        Inc. and Ancestry.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CYNTHIA RAMER and RICCI NEER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MYFAMILY.COM, INC. and ANCESTRY.COM,<br><br>    Defendants. | DEFENDANTS' MEMORANDUM IN SUPPORT OF FINAL SETTLMENT APPROVAL<br><br><br><br>CASE NO. 2:05cv359 DB<br><br>Judge Dee Benson |

Defendants MyFamily.com, Inc. and Ancestry.com (collectively, "MyFamily") hereby submit this memorandum in support of the Court giving final approval to the Stipulation of Settlement ("Settlement" or "Settlement Agreement") entered into between MyFamily and the class representatives ("Plaintiffs") in this case.  For the following reasons, the Court should give final approval to the Settlement.

## FACTUAL BACKGROUND AND CASE HISTORY

MyFamily is a company that, among other things, provides access via the internet and its Ancestry.com website to genealogical information databases that cover large parts of the world. These databases include an extremely large number of genealogical records and can be of tremendous benefit to those interested in pursuing genealogical research. Although MyFamily makes a limited amount of its material available without a subscription, most of that database information is restricted to those who have purchased a subscription with MyFamily. As relevant to this case, MyFamily has historically allowed its customers to purchase subscriptions on either of two bases:

    a.    An annual subscription paid in full at the beginning of the subscription and each renewal period; and

    b.    An annual subscription paid in monthly installments.[1]

MyFamily's pricing of these two options led to those customers that chose the monthly payment option paying more than did those that paid in full at the beginning of the subscription. For example, class representative Cynthia Ramer purchased an annual subscription to Ancestry.com on the monthly payment plan, thus obligating herself to pay MyFamily $155.40 over the period of her one-year membership. If she had instead purchased the subscription with the up-front payment, she would have paid $79.95.

In July 2004, Plaintiffs filed this lawsuit as a class action in the United States District Court for the District of Arizona. The Complaint alleged that MyFamily violated the Truth in

---

[1] MyFamily also allowed its customers to purchase monthly subscriptions that would automatically renew until the customer chose to cancel the subscription. This particular type of subscription is not relevant to this litigation.

2

Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), because it did not expressly disclose that the difference between the total amounts paid under the two separate subscription options was the cost of credit.  Plaintiff asserted that this failure entitled her and all class members to statutory damages.

MyFamily denies that its historical pricing practices in anyway implicate obligations under TILA.  Moreover, to the extent such obligations could be said to exist, MyFamily believes that it substantially complied with such obligations.  If this matter were not to settle, MyFamily would vigorously oppose class certification and, if necessary, would fully defend its practices through trial.  Indeed, were it not to prevail at trial, MyFamily would give serious consideration to appealing the case.

Wanting to avoid the costs that are necessarily inherent in such a defense, MyFamily entered into settlement negotiations with Plaintiff.  Initially, the parties stipulated to a transfer of the case from the court in Arizona to this Court for the convenience of the parties.  On February 9, 2005, the Arizona court ordered that transfer.

From that point until the end of July 2005, the parties engaged in informal discovery and settlement negotiations.  On July 29, 2005, the parties reached a resolution and executed the Stipulation of Settlement, which provided for:

1.  Certification of the class for settlement purposes only;[2]

2.  Certain specified benefits to be furnished to the class (discussed below);

---

[2] The class is defined as: "All persons who at any time prior to November 3, 2005, entered into one or more annual subscription agreements with MyFamily.com, Inc. through its Ancestry.com website payable in monthly installments."

3

3. Notice of the Settlement to be given to class members, including of their rights to object to the Settlement or to opt out of the class;

4. A final approval hearing at which the Court would determine whether to accept and approve the Settlement as binding on all class members; and

5. MyFamily's payment of class counsel's reasonable attorney fees and expenses associated with this litigation.

The benefits of the Settlement to class members fall into three categories: First, every class member will be entitled to a free 31-day access to *all* of MyFamily's subscription databases. Not only will this provide a free additional period of subscription to each class member, in many cases it will expand the class members' access for that 31-day period. This is because many class members subscribe to only some of MyFamily's databases. The aggregate market value of this benefit is over $3 million.[3] Second, every class member (and all other MyFamily subscribers) will from this point forward be entitled to treat any annual subscription that is billed on a monthly basis as a monthly subscription subject to short-notice cancellation. Third, MyFamily has paid the notice and many of the other administrative costs associated with this class action and will pay class counsel's reasonable attorney fees. In return, all class members who have not effectively opted out by the deadline stated in the Preliminary Approval Order will release all claims they have against MyFamily, including attorney fees and costs, related to this matter.

---

[3] As discussed below, this is six times the maximum amount the class could recover if this matter went to trial and all issues were decided in its favor.

On November 7, 2005, the Court granted preliminary approval to the Settlement, ordered that notice be given to the class, and set a date for the final approval hearing. Between November 17, 2005 and January 12, 2006, MyFamily (at its expense) sent notices to the approximately 151,100 members of the certified class. Affidavit of David Farnsworth filed with the Court on January 25, 2006 ("Farnsworth Affidavit"). Of those, substantially less than ten percent (between approximately 8,900 and 12,000) were undeliverable. *Id.* As a result of the notice being sent out, counsel for MyFamily and counsel for the class received numerous communications from a broad range of class members, thus establishing that the notice was actually received by the class membership.

## DISCUSSION

Under Rule 23 of the Federal Rules of Civil Procedure, when a class has been certified, the action may be settled only upon the approval of the district court. Fed. R. Civ. P. 23(e)(1)(A). Such approval may be given "only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).

> In exercising its discretion, the trial court *must* approve a settlement if it is fair, reasonable, and adequate. In assessing whether the settlement is fair, reasonable, and adequate the trial court should consider:
>
> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (emphasis added), *quoted in Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *overruled in part on other grounds by Devlin v. Scardeletti*, 536 U.S. 1 (2002).  In this case, all four factors weigh heavily in favor of approval of the Settlement.

**I.      The Settlement Was Fairly and Honestly Negotiated**

In this case, in an effort to avoid the prohibitive costs associated with litigation generally and class actions particularly, MyFamily approached Plaintiff early on about trying to settle this matter.  In particular, MyFamily recognized that the maximum damages it was facing in this matter was $500,000[4] and that its attorney fees could approach that amount if the case were fully litigated.  Accordingly, MyFamily decided that it would rather settle this case (even though it denies any liability) while at the same time providing a substantial benefit to its customers.

In the Settlement, MyFamily has agreed to provide each class member a one-month subscription to all of its Ancestry.com subscription databases at no charge.  At current rates, this monthly subscription would cost the class members $24.95 each to purchase.  Given the number of class members (over 150,000) and the cap on statutory damages, the most that any member could expect to receive if the matter went to trial and the class prevailed on all issues is $3.33.  In all likelihood, this small amount would be reduced even further by various costs that might be taxed to the class (e.g., class notice, costs of administering the settlement, attorney fees).  Thus, under the Settlement, instead of possibly receiving what can only be considered as small pocket change, each class member will receive free of charge a benefit that each one of them has already

---

[4] *See* 15 U.S.C. § 1640(a)(2)(B).

6

shown an interest in when they originally subscribed to MyFamily.com that is worth substantially more.

Moreover, there are no payments or other incentives going to Plaintiff or to class counsel that would suggest either of them are "selling out" the class for their own gain or benefit. The Settlement does not provide for any payments at all to be made to either of the named plaintiffs. Accordingly, all they can expect to receive is the same benefit to which every other class member will be entitled. Similarly, although MyFamily has agreed to pay class counsel's attorney fees and costs, those fees are limited to what is reasonable and class counsel has agreed to a ceiling on that amount (and no floor).

The negotiations leading to the Settlement were above board in all respects. This first factor therefore weighs in favor of approving the Settlement.

## II. Absent the Settlement, the Outcome of the Litigation Is in Serious Doubt

It is far from certain that the class could prevail on the claims it is pursuing against MyFamily in this case. To the best of MyFamily's knowledge, there has not been another case brought under TILA with a fact pattern similar to the one presented in this case. As class counsel has acknowledged, the claims are "novel."

As noted above, MyFamily denies any and all liability for the claims being advanced. MyFamily does not believe TILA applies to its online database subscription services at all. Even if it did, MyFamily would argue that its offering a different price to those subscribers that pay for their annual subscriptions all at once as opposed to paying in twelve monthly payments does not constitute the "exten[sion]" of "credit." 15 U.S.C. § 1602(e), (f)(1). Nor is such pricing arrangement the imposition of a "finance charge." 15 U.S.C. § 1602(f)(1). If MyFamily were to

7

prevail on any of these arguments, there would be no surviving claim for liability to the members of the class.

Moreover, MyFamily stipulated to the certification of the class *for settlement purposes only*. Stipulation of Settlement at 5. If the Settlement were not reached, MyFamily would have fought hard against the class ever being certified. For instance, MyFamily would not have been willing to front the costs of notice to the class. Although MyFamily was able to accomplish that notice for about $56,000 (Farnsworth Affidavit ¶ 12), class counsel would not have been able to accomplish it for that relatively small amount. Because of contractual obligations to protect its customers' privacy, MyFamily would not have disclosed class member email addresses to class counsel. This would have necessitated all notice being sent out via first class mail which would have increased the costs substantially. It is not clear whether class counsel would have been able to carry this burden.

## III. The Value to the Class of an Immediate Recovery Far Outweighs the Slight Possibility of a Better Result After Continued Litigation

As discussed in the foregoing section, it is far from clear that if this matter were to proceed through litigation that members of the class would recover any benefit at all. The Settlement is appropriate because it ensures that all class members will receive a benefit.

More importantly, however, is the fact that the benefit that class members *will certainly* receive under the Settlement is far more valuable than the amount they *might* receive if the litigation continued. Specifically, the greatest recovery that could be obtained through litigation is $500,000 on a class-wide basis, approximately $3.33 for each member. In stark contract, under the Settlement, MyFamily will provide more than $3 million worth of services to class members, approximately $24.95 for each member.

Continued litigation cannot offer the class a better deal than what the Settlement now offers them. This is strongly evidenced by the fact that less than one tenth of one percent of the class members exercised their right to opt out of the Settlement and only slightly more than one one-thousandth of one percent objected to the Settlement.[5]

### IV.    Both Parties Have Determined The Settlement to Be Fair and Reasonable

The foregoing sections establish why, in MyFamily's view, the Settlement is appropriate for approval by the Court. Similarly, the brief filed by class counsel makes a similar showing on behalf of the class. Particularly given the fact that the class members will be receiving a benefit with a value six times what they could receive under the best of circumstances without the Settlement, the Court should only reject this Settlement if it has a strong basis to do so. To date, MyFamily is unaware of any such basis.

Referring to the authority cited by class counsel in its brief in support of the Settlement: A "trial court is entitled to rely upon the judgment of experienced counsel for the parties. . . . Indeed, the trial judge, absent fraud, collusion or the like, should be hesitant to substitute its [sic] own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted).

/////

/////

---

[5] Only two class members filed objections. One objector complained of matters that are unrelated to the issues of this lawsuit (specifically, whether MyFamily rightfully charged her a subscription fee when she failed to cancel her subscription during the free trial period in the manner required under the terms of that trial subscription). The other objector did not identify any specific problem with the Settlement and stated only that "I am simply stating that I do NOT agree with the proposed settlement as I will NEVER use their services again." Neither these two objectors nor anybody else has filed a notice with the Court or with counsel indicating an intention to appear at the final settlement hearing.

## CONCLUSION

For the foregoing reasons, the Court should approve the Stipulation of Settlement reached by the parties and enter the Final Approval Order.

Dated this 7th day of February, 2006.

                               FILLMORE SPENCER LLC

                               /Matthew R. Howell/
                               Matthew R. Howell
                               Attorneys for Defendants MyFamily.com, Inc.
                                     And Ancestry.com